IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

EMERSON ELECTRIC CO., et al.,

         Plaintiffs,

    v.

LE CARBONE LORRAINE, S.A., et al.,

         Defendants.

Civil Action
No. 05-6042 (JBS)

**OPINION**

**APPEARANCES:**

Daniel A. Sasse, Esq.
Matthew J. McBurney, Esq.
CROWELL & MORING
3 Park Plaza
Irvine, CA 92614
    Counsel for Plaintiffs

Jonathan S. Feld, Esq.
Mary Ellen Hennessy, Esq.
KATTEN MUCHIN ROSENMANN, LLP
525 W. Monroe Street
Chicago, IL 60661-3693
    Counsel for Defendants Le Carbone Lorraine, Carbone Lorraine
    North America Corp., and Carbone of America Industries Corp.

**Simandle, District Judge:**

I.   INTRODUCTION

On Tuesday, August 12, 2008, the Court heard oral argument

about three pending motions:

- Plaintiffs' motion to compel Carbone Lorraine North America
  Corp. and Carbone of America Industries Corp. (collectively
  "Carbone") and Le Carbone Lorraine, S.A ("LCL"),  to produce
  documents responsive to Plaintiffs' First Set of  Document
  Requests (Document Request Nos. 16, 18-19, 24, 31, 33, 48,
  54) and Plaintiffs' First Set of Interrogatories to

Defendants, (Interrogatory Nos. 8 and 10) that relate to Carbone's involvement in the Isostatic Graphite price-fixing conspiracy ("the Isostatic Graphite Documents") [Docket Items 96, 99];

• Plaintiffs' motion to compel Defendants to permit the inspection and copying of documents sought in Plaintiffs' First Set of Document Requests, Request for Production No. 57, relating to documents produced to the European Commission in relation to a case imposing fines on Le Carbone Lorraine, S.A., for its participation in a cartel involving electrical carbon and graphite products [Docket Items 95, 100]; and

• Plaintiffs' motion for an order declaring that the Court has personal jurisdiction over LCL and to compel LCL to respond to discovery [Docket Items 94, 101].

The Court reserved decision. For the reasons explained below, the Court shall enter an order finding that the Court has personal jurisdiction over LCL as a defendant and granting the motions to compel discovery of the documents produced to the Department of Justice and the European Commission.

## II. BACKGROUND

This is an antitrust action arising out of an alleged conspiracy to fix prices in the electrical carbon products industry. See generally, Emerson Elec. Co. v. Le Carbone Lorraine, S.A., 500 F. Supp. 2d 437 (D.N.J. 2007) ("the August 2007 Opinion"). Approximately one year ago, Defendants filed motions to dismiss on several grounds. Particularly important to the current posture of the case, Defendant LCL filed a motion to dismiss for lack of subject matter jurisdiction and lack of personal jurisdiction. The Court held that it "lacks

2

jurisdiction over Plaintiffs' claims related to foreign purchases," id. at 447, and therefore granted LCL's motion to dismiss those claims.  That issue was heavily contested and the briefing and oral arguments focused on it.

However, the Court did not focus on the claim by LCL that the Court lacked personal jurisdiction over it and that the claims should be dismissed on that basis.  In fact, the Court declined to decide that issue, as it stated in a footnote:

> Because the Court is dismissing claims related to purchases abroad, the Court will not decide whether it has personal jurisdiction over Defendant Le Carbone Lorraine; it appears that all claims against Le Carbone Lorraine are dismissed for lack of subject matter jurisdiction under the FTAIA.

Id. at 447 n. 7.  Although the Court indicated that it "appeared" that all claims against LCL in the Amended Complaint were related to purchases abroad, the Court did not decide that issue and did not order LCL to be dismissed as a party.  Instead, the Order stated that "the Motion to Dismiss the Amended Complaint by Defendants Le Carbone Lorraine, Carbone Lorraine North America Corp., and Carbone of America Industries Corp. [Docket Item 9] shall be, and hereby is, GRANTED in part as to all claims arising out of foreign purchases."  Id. at 457.

Upon closer examination of the Amended Complaint pursuant to the present motions, the Court has become aware that the Amended Complaint also alleges LCL caused Plaintiffs antitrust injury

3

unrelated to foreign purchases.  Those claims were not examined
nor dismissed by the August 2007 Opinion.  To the extent the
August 2007 Opinion indicated that LCL should be dismissed
entirely from this action, the Court revises that decision as
explained herein.

Thus, the issue of whether the Court has personal
jurisdiction over LCL for the claims asserted in the Amended
Complaint is now squarely before the Court and has been briefed
and argued by the parties on these motions.  For the reasons
explained below, the Court finds that it has specific personal
jurisdiction over LCL.

**III. PERSONAL JURISDICTION**

    **A.   Standards**

The Court shall analyze the Amended Complaint to determine
whether it alleges facts sufficient to show that the Court has
personal jurisdiction over LCL.

> [W]hen the court does not hold an evidentiary
> hearing on the motion to dismiss, the
> plaintiff need only establish a prima facie
> case of personal jurisdiction and the
> plaintiff is entitled to have its allegations
> taken as true and all factual disputes drawn
> in its favor.

Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir.
2004).  When a defendant raises a jurisdictional defense, the
plaintiff must then show, "that the cause of action arose from
the defendant's forum-related activities (specific jurisdiction)

4

or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)." Mellon Bank (EAST) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 554 (3d Cir. 1993).

> The issue of personal jurisdiction in federal question cases must be analyzed within the context of the familiar "minimum contacts" test enunciated in International Shoe Co. v. Washington, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945). . . . Under International Shoe, the exercise of personal jurisdiction is permissible if: (1) the entity has "minimum contacts" with the territory of the "forum," and (2) the assertion of jurisdiction over the entity comports with "'traditional notions of fair play and substantial justice.'" [Id.] at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463, 85 L. Ed. 278, 61 S. Ct. 339 (1940)).

In re Auto. Refinishing Paint Antitrust Litig., 229 F.R.D. 482, 487 (E.D. Pa. 2005).

It is the law of this Circuit that for claims arising under the Clayton Act against foreign nationals, the jurisdictional analysis proceeds according to a national contacts test. In re Auto. Refinishing Paint Antitrust Litig., 358 F.3d 288, 298-99 (3d Cir. 2004). In other words, the Court can enter an order establishing personal jurisdiction over LCL and compelling discovery from it if LCL had sufficient contacts with the United States as a whole because the claims at issue in this case are federal question claims arising under a statute that provides for world-wide service of process. See 15 U.S.C. § 22; In re Auto.

Refinishing Paint Antitrust Litig., 358 F.3d 288 at 293.

> [P]ersonal jurisdiction in federal antitrust
> litigation is assessed on the basis of a
> defendant's aggregate contacts with the United
> States as a whole. . . . We hold further that
> personal jurisdiction under Section 12 of the
> Clayton Act is as broad as the limits of due
> process under the Fifth Amendment.

Id. at 298-99.

Although Plaintiffs bear a burden of establishing jurisdiction, the Court must accept their allegations as true at this stage.  See Miller, 384 F.3d at 97 (on motion to dismiss for lack of personal jurisdiction, court accepts allegations as true, in absence of hearing).  As the disputes adjudicated herein make clear, discovery is ongoing and the Court shall not compel Plaintiffs, at this stage, to make more than their prima facie showing of a basis for personal jurisdiction over LCL. Accordingly, the Court must analyze the Amended Complaint to determine whether it alleges LCL had sufficient minimum contacts with the nation such that exercising personal jurisdiction over LCL for the claims asserted in this action would be fair.

> In assessing the sufficiency of a defendant's
> contacts with the forum, a court should look
> at the extent to which the defendant "availed
> himself of the privileges of American law and
> the extent to which he could reasonably
> anticipate being involved in litigation in the
> United States." Max Daetwyler, 762 F.2d at
> 295; see also Hanson v. Denckla, 357 U.S. 235,
> 253 (1958) (requiring "that there be some act
> by which the defendant purposefully avails
> itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws"). In assessing whether a commercial entity has availed itself of the privileges of a forum's laws, jurisdiction is proper if the defendant has taken "action . . . purposefully directed toward the forum State." Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., 480 U.S. 102, 112, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987) (plurality opinion of O'Connor, J.).

Once minimum contacts have been established, we assess whether the exercise of personal jurisdiction is consistent with "traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316 (citation omitted). . . . In the federal court context, the inquiry will be slightly different, taking less account of federalism concerns, see Max Daetwyler, 762 F.2d at 294 n.4, and focusing more on the national interest in furthering the policies of the law(s) under which the plaintiff is suing.

Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 370-71 (3d Cir. 2002).

## B.   Allegations

Plaintiffs have alleged the following relevant contacts between LCL and the United States:

- LCL participated in a conspiracy, one object of which was to fix prices in the United States. (Am. Compl. ¶¶ 35, 38).
- LCL directed its American subsidiaries to raise American prices on electrical carbon products. (Id. ¶ 35).
- LCL's conduct caused antitrust injuries in the United States (Id. ¶ 68) that are the subject of this action.
- LCL acquired Stackpole Corporation, an American company, to eliminate competition in the United States. (Id. ¶¶ 81, 106(g).)
- LCL executives met with coconspirators outside the

7

United States on specifically identified occasions to
further the conspiracy in the United States and abroad.
(<u>Id.</u> ¶¶ 82, 86, 96.)

- Prices for electrical carbon products sold by
Defendants and their coconspirators were fixed and
artificially high in the United States (<u>Id.</u> ¶ 112.)

**C.   Court Has Specific Jurisdiction Over LCL**

Plaintiffs have alleged sufficient facts for the Court to
find that it has specific jurisdiction over LCL to adjudicate the
claims against it asserted in the Amended Complaint.  Among other
things, Plaintiffs allege LCL acquired an American company for
the purpose of raising prices on a product in the American
market, that it was part of a conspiracy to do so, and that LCL
accomplished the purposes of this conspiracy in the United
States, where the effects were felt, because the prices of
electrical carbon products were artificially inflated by this
conduct.  Plaintiffs are suing for injury they allegedly suffered
by purchasing electrical carbon products in this American market
that they claim LCL intentionally manipulated and conspired with
others to manipulate.  Accordingly, Plaintiffs adequately allege
that LCL specifically directed its actions toward the United
States; therefore, it is fair to subject LCL to United States
antitrust laws with respect to domestic markets and purchases,
because those laws focus exclusively on preventing manipulation
of the purchases in an American market.  <u>See</u> August 2007 Opinion
(limiting this case to claims related to domestic purchases).

8

IV.  **MOTIONS TO COMPEL**

A.  **Isostatic Graphite Documents**

Plaintiffs filed a motion requesting that the Court compel Defendants to produce documents related to their involvement in the Isostatic Graphite price fixing conspiracy.  Plaintiffs indicate that the parties have met and conferred as required by L. Civ. R. 37.1(a)(1) and that Defendants are unwilling to produce any documents relating to Plaintiffs' First Set of Document Requests Nos. 16, 18-19, 24, 31, 33, 48, 54  and Plaintiffs' First Set of Interrogatories to Defendants Nos. 8 and 10.  Plaintiffs argue that Carbone and LCL should be compelled to respond to these discovery requests for three reasons: (1) in the criminal Isostatic Graphite case, the Government provided Carbone and LCL with amnesty for any charges in any other carbon industries, including the electrical carbon products industry, thereby indicating that the Isostatic Graphite pleas was relevant to conduct at issue in the electrical carbon products cartel; (2) Carbone and LCL's guilty plea in Isostatic Graphite and documents related to the plea are likely to lead to relevant evidence because the plea and related conduct are admissible evidence in this litigation under Rule 404(b); and (3) Carbone and LCL have failed to raise valid objections to this discovery.

Carbone opposes the motion by arguing that (1) the reference to "other carbon industries" in Carbone's isostatic plea is an

insufficient basis on which to expand discovery so greatly in this electrical carbon products litigation, (2) Plaintiffs' assertions regarding the admissibility of hypothetical evidence are not relevant to the proper limits of discovery, (3) Carbone's objections are valid, and (4) limiting discovery to exclude isostatic graphite materials is proper under Rule 26 because the burden or expense of the discovery outweighs its likely benefit.

At oral argument, Plaintiffs' counsel agreed to limit the scope of this motion to compel to the documents produced to the Department of Justice in connection with the Isostatic Graphite investigation, without prejudice to other requests.

The scope of discovery is defined by Fed. R. Civ. P. 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Under Rule 26(b)(2)(C),

> the court must limit the frequency or extent of discovery otherwise allowed by these rules

10

or by local rule if it determines that:
    (i) the discovery sought is unreasonably
cumulative or duplicative, or can be obtained
from some other source that is more
convenient, less burdensome, or less
expensive;
    (ii) the party seeking discovery has had
ample opportunity to obtain the information by
discovery in the action; or
    (iii) the burden or expense of the proposed
discovery outweighs its likely benefit,
considering the needs of the case, the amount
in controversy, the parties' resources, the
importance of the issues at stake in the
action, and the importance of the discovery in
resolving the issues.

Carbone points out that there is no claim in this case for any purchase of isostatic graphite products and therefore argues that discovery related only to a conspiracy to manipulate the prices of isostatic graphite is not "relevant to any claim or defense" in the case under Rule 26(b)(1).  Carbone has offered photographs illustrating how different the isostatic graphite appears from the electrical carbon products in this case.

The United States offered Carbone criminal immunity for conduct not only in the isostatic graphite industry but also in any "other carbon industries," in exchange for Carbone's cooperation in the isostatic graphite case.  Plaintiffs argue that the information Defendants supplied to the Government in that criminal case must be relevant to the electrical carbon products cartel because it must have included information about their illegal behavior relating to "other graphite or carbon

11

products." Carbone alleges that this is boilerplate language and, in its sur-reply, points to an example of another company that included the language in an isostatic graphite plea even though it produces no electrical carbon products.

Plaintiffs additionally argue that (1) the cartels may have been intertwined, in that they involved the same people, companies, and means of price manipulation; and (2) evidence of price fixing in another industry will be admissible under Rule 404(b) to show that any price fixing in this case was done with knowledge and intent and not by mistake. Plaintiffs argue that absent privilege, they cannot be precluded from obtaining admissible evidence. Defendants claim no privilege.

Although much of the material sought – including guilty pleas and filed pleadings in the isostatic graphite cases – are publicly available and do not need to be produced during discovery in order for Plaintiff to obtain them, it does appear that discovery of other evidence of the isostatic graphite cartel should be permitted because it is likely to lead to evidence that may be admissible at trial.[1] Similar cartel activities undertaken in a similar marketplace may be probative of the motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake of Carbone, its officers or

---

[1] As the Court stated during oral argument, there is no determination at this time that any material will or will not be admitted at trial.

employees in the present case under Rule 404(b), Fed. R. Evid.
Likewise, this narrowed field of discoverable materials, limited
to a group of documents or other materials already produced to
the Department of Justice in connection with the Isostatic
Graphite investigation, does not impose an undue burden on the
producing party given the needs of this case, the amount in
controversy, the parties' resources, and the significance of
these items in helping to resolve the issues in their Electrical
Carbon Products litigation, within Rule 26(b)(2)(C), Fed. R. Civ.
P.  Because the evidence sought is relevant and the Court, with
Plaintiffs' agreement, has narrowed the scope of discovery, the
Court shall order Defendants to produce the documents produced to
the Department of Justice in connection with the Isostatic
Graphite investigation within twenty (20) days of entry of the
accompanying Order.

**B.   Motion to Compel Inspection and Copying of EC Documents**

Plaintiffs seek an order compelling LCL and Carbone to
permit the inspection and copying of documents referring and
relating to the decision by the European Commission in a case
that imposed fines on LCL for its participation in a cartel in
the "'electrical and mechanical carbon and graphite products'
market in violation of Article 81 of the Treaty establishing the
European Community and Article 53 of the Agreement on the
European Economic Area."  (Pl. EC Br. at 1-2.)  "Plaintiffs

13

believe that the documents LCL provided to the European Commission during its investigation of the price-fixing conspiracy contain details" about cartel meetings organized and attended by LCL executives.  (Pl. EC Br. at 2.)  Plaintiffs allege LCL's counsel informed them the documents produced to the European Commission are contained on a CD-ROM and are in his possession.

The Carbone Defendants oppose discovery of these materials arguing that discovery cannot be obtained from them because the documents are in the hands of LCL, whom they say is not a party, and that even if the Court had personal jurisdiction over LCL, the Federal Rules of Civil Procedure would not apply to LCL and Plaintiffs would have to resort to the Hague Convention for obtaining discovery.

The Court has already decided that LCL is a party to this action subject to the jurisdiction of this Court and therefore the Court can enter an order against LCL directly compelling the discovery, if such discovery is proper. Furthermore, as discussed below, the Hague Convention is merely an alternative route for seeking discovery and Plaintiffs are not compelled to resort to it first, see Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct. for the S. Dist. of Iowa, 482 U.S. 522 (1987), as Defendants conceded at oral argument.  While the Court may order a party to utilize the Hague Convention to obtain

14

discovery from a foreign corporation, it shall not do so in this case.

> The Convention prescribes certain procedures by which a judicial authority in one contracting nation may request evidence located in another nation. Our Supreme Court rejected a first resort rule in favor of the Convention in a case where personal jurisdiction was not contested and the discovery sought involved only the merits of the case.

In re Auto. Refinishing Paint Antitrust Litig., 358 F.3d at 299. Therefore, an automatic requirement that Plaintiffs must first resort to the Hague Convention would be contrary to established law.

Nevertheless, this Court has been directed to balance certain factors to determine whether to require Plaintiffs to utilize the alternative Hague Convention procedures.  The foreign opponent of the discovery bears "the burden of persuasion as to the optional use of the Convention procedures." Id. at 305.

> Notwithstanding its rejection of the first resort rule, Aerospatiale instructs the American courts to "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." [482 U.S.] at 546. "Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." Id.

In re Auto. Refinishing Paint Antitrust Litig., 358 F.3d at 301.

The parties agree that district courts should scrutinize "the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective," when determining whether to utilize the optional Convention procedures.  See Aerospatiale, 482 U.S. at 544 (creating this requirement).  Defendants bear the burden of persuading this Court that this balancing test favors use of the Hague Convention procedures rather than the Federal Rules of Civil Procedure.  In re Auto. Refinishing Paint Antitrust Litig., 358 F.3d at 305. They have failed to do so.

In their papers, Defendants argue that resort to the Hague Convention procedures will be effective "because France honors document requests that are 'limitatively enumerated in the letter request and have a direct and clear nexus with the subject matter of the litigation'" (Def. EC Br. at 5) and that sovereign French interests weigh in favor of the Hague Convention because the EC documents relate to transactions in Europe and reflect information requested to investigate compliance with European, not American, antitrust laws.

At oral argument, upon request from the Court for further elaboration of the sovereign interests at stake, counsel for Defendants argued that LCL is a French corporation that sells no

16

products in the United States. Counsel admitted, however, that at times there have been common officers between LCL and its American subsidiary.  However, while the interests of the French private company in resisting discovery may be significant, counsel has failed to identify the sovereign's interest - that is the interest of either France or the European Union – that would be offended by the discovery.  Indeed, as Plaintiffs are seeking only information LCL was already compelled to turn over to the European Commission in a case about this same conspiracy, it does not appear that the scope of the discovery is so broad as to offend the EC or French tribunals.

Thus, while resort to the Hague Convention procedures may be equally effective, as counsel for both parties indicated, that would be a lengthier process.  That delay unnecessary as the other two factors - sovereign interests and the "facts," that is the specific discovery sought – weigh against requiring Plaintiffs to go through the Hague to obtain these documents. Defendants have not met their burden of showing that the Aerospatiale comity factors weigh in favor of requiring Plaintiffs to utilize the Hague Convention for obtaining discovery from LCL in this case.  The requested materials are highly relevant to this case, they are not privileged, their disclosure has not been shown to be unduly burdensome, and Defendant LCL shall produce same within twenty (20) days.

17

## V.   CONCLUSION

The Court finds that it has personal jurisdiction over Defendant LCL to compel it to respond to discovery requests. Because Plaintiffs are seeking discoverable material, and because Plaintiffs do not have to resort first to the Hague Convention, the Court shall grant the motions to compel discovery of documents already provided to the U.S. Department of Justice in connection with the isostatic graphite investigation and to the European Commission in connection with the investigation to fix prices in the European electrical carbon products market.  An appropriate order shall be entered.


**August 27, 2008**                          **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              U.S. District Judge

18