IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

EMERSON ELECTRIC COMPANY, et al.,

Plaintiffs,

v.

LE CARBONE LORRAINE, S.A., et al.,

Defendants.

HON. JEROME B. SIMANDLE

Civil Action No. 05-6042 (JBS)

**MEMORANDUM OPINION**

**SIMANDLE**, DISTRICT JUDGE:

This matter comes before the Court on three motions for issuance of request for international judicial assistance pursuant to Rule 28(b), Fed. R. Civ. P., and 28 U.S.C. § 1781, filed by Plaintiffs [Docket Items 140, 141 and 146]. THIS COURT FINDS AS FOLLOWS:

1. Plaintiffs seek to depose three non-party witnesses -- Robin D. Emerson, Richard Fourcault, and Jacques Marquand -- all of whom reside abroad and all of whom, Plaintiffs allege, were involved in an international conspiracy to fix the price of electrical carbon product in the United States. Both Mr. Fourcault and Mr. Marquand were employed by Defendant Le Carbone Lorraine, S.A. ("LCL") -- Mr. Fourcault as Vice President of LCL's Consumer Division and Mr. Marquand as President of that division. Mr. Emerson was employed by a subsidiary of The Morgan Crucible Company, PLC, which is a former defendant in this

matter. The facts are well-known to all parties and the Court will not reiterate them here.

2. Defendants do not oppose Plaintiffs' motions in their entirety, but instead ask the Court to limit the questions that may be asked in the following ways:

- Questions relating to the European Commission's investigation should be stricken from the request
- Questions for examination relating to Defendants' activities in Europe should be stricken
- Questions for examination relating to the isostatic graphite industry should be stricken from the request
- Questions relating to Mr. Emerson's communications with and documents he produced to the U.S. Department of Justice relating to his obstruction of justice guilty plea should be stricken from the request
- The request should be limited to cover the defined relevant period of October 1988 to September 2001
- The request should be amended to make clear that Defendants will be entitled to attend any examination proceedings and question the witness

3. The scope of proper discovery is governed by Rule 26(b)(1), Fed. R. Civ. P.:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead

> to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

4. Rule 26(b)(2)(C) incorporates the rule of proportionality. Thus, Rule 26(b)(2)(C) requires the Court to limit the extent of the discovery when, inter alia, "the burden or expense of the proposed discovery outweighs its likely benefit" or the information can be obtained from another, less burdensome, source.

5. The Court rejects Defendants' request to strike questions related to the European Commission investigation and the witnesses' conduct in Europe. In previous discovery disputes, Defendants have similarly argued that Plaintiffs are not entitled to information about the European conspiracy to fix the price of electrical carbon products, given this Court's decision that it lacks subject matter jurisdiction over claims of conspiracy to purchase these products abroad. Emerson Elec. Co. v. Le Carbone Lorraine, S.A., 500 F.Supp.2d 437 (D.N.J. 2007) ("Emerson I"). Plaintiffs maintain, however, that efforts to fix prices in the United States occurred, and may have been based, in Europe. In particular, Plaintiffs accuse LCL, a French business, of orchestrating a conspiracy targeted, at least in part, in the United States. Further, the European Commission, though it ultimately found insufficient evidence that the European cartel extended beyond Europe and the Middle East, was investigating the

"same conspiracy" at issue here. Emerson Elec. Co. v. Le Carbone Lorraine, S.A., No. 05-6042, 2008 WL 4126602, at *8 (D.N.J. Aug. 27, 2008) ("Emerson II"). Finally, the Court has reviewed the proposed questions for each of the three motions and does not find undue emphasis placed on European activity and does not find the burden of answering those questions that do pertain to European activities outweigh their relevance. Therefore, these questions will be permitted.

6. The Court likewise will not strike questions relating to the isostatic graphite industry. Defendants LCL and its North American subsidiaries pled guilty to a price-fixing conspiracy in the isostatic graphite industry. The Court has previously found that information about this conspiracy is relevant because "[s]imilar cartel activities undertaken in a similar marketplace may be probative of the motive, opportunity, intent, preparation, plan knowledge, identity or absence of mistake" of Defendants. Emerson II, at *6. Furthermore, the Court finds that the few, relatively narrow, proposed questions on the isostatic graphite industry are focused on its connection to electrical carbon products and are not unduly burdensome, and should be permitted.

7. The Court further will not strike questions related to Mr. Emerson's guilty plea for obstruction of justice. Plaintiffs maintain, and Defendants do not contest, that Mr. Emerson pled guilty to obstructing the Department of Justice investigation

into price-fixing in the electrical carbon products industry. It makes little difference that Mr. Emerson was convicted of obstruction of justice, not violating antitrust law. The Court, therefore, finds this subject highly relevant and questioning on the subject would not be unduly burdensome and will be allowed.

8. The Court does accept Defendants' request that these probing questions be limited to the defined "relevant period" of October 1988 to September 2001. Plaintiffs have offered no defense for inquiring beyond this period - already a lengthy one. Information beyond this period has limited relevance and creates the risk of a truly limitless inquiry. The Court finds the period to be a reasonable, and necessary, limit tailored to the relevant time period.

9. The Court also orders Plaintiffs to permit Defendants to attend any examination proceedings. To the extent that the judiciary of the United Kingdom permit counsel for both parties to question the witnesses, Defendants are permitted to question the witnesses within the scope of Plaintiffs' examination. To the extent that the French judiciary will provide an official inquisitor, Defendants' questions are included with the proposed questions to be attached to the Court's request for international assistance. The Court has reviewed all proposed questions from both Plaintiffs and Defendants and concludes that all questions are proper for the purpose of these depositions.

10. An accompanying Order will be entered.

**February 18, 2009**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge